ANNIE REDIGAN *vs.* BOSTON AND MAINE RAILROAD.

Worcester.  September 29, 1891. — November 25, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ

*Personal Injuries — Railroad Premises — Licensee.*

A foot traveller upon the highway in the evening, who for the sake of reaching a connecting highway by a short cut enters upon the unenclosed grounds and platform of a railroad station, and, while walking along the platform, is injured by falling into an unguarded hole made by the raising of a trap door forming part of the platform and opening upon the cellar steps of the station building, is a mere licensee, and cannot recover from the railroad company for his injury.

TORT for personal injuries occasioned to the plaintiff by falling into a hole in the platform of a station belonging to a railroad leased by the defendant. The case was tried in the Superior Court, before *Aldrich*, J., who ruled that there was no evidence for the jury, and ordered a verdict for the defendant; and the plaintiff alleged exceptions. The nature of the evidence appears in the opinion.

*T. G. Kent & G. T. Dewey*, for the plaintiff.

*F. P. Goulding*, for the defendant.

BARKER, J. The railroad station at which the accident happened is so situated that its grounds upon the west and south are contiguous to public streets, Prescott Street on the west and Lincoln Square on the south. The grounds are unenclosed, and their surface is of substantially the same level and appearance with the streets, so that no line of demarcation is apparent. The station building is surrounded by a platform elevated one step above the ground, and the platform continues southerly along the railroad track to Lincoln Square. In the other direction, the platform is distant at its northwest corner about twenty-five feet from the easterly line of the other street. The surface of the station grounds between the streets and the platform was in a suitable condition for public travel, and was very much used by teams and foot passengers in going to and from the station, and in travelling across the station grounds from one street to the other. There was no sidewalk or other defined

footpath on the east side of Prescott Street next the station grounds, but there was a brick sidewalk on the west side of Prescott Street, extending to Lincoln Square. There was a path trodden by foot passengers extending diagonally across Prescott Street and the northerly portion of the open station grounds towards the northwest corner of the platform. The route by this path and the platform on the west and south sides of the station building, and thence southerly by the platform next the tracks between the northerly part of Prescott Street and the Square at the end of the platform, was a hundred or more feet shorter than that by the public streets. A large number of persons not passengers or having business at the station went over the platform daily, in passing by this short cut from one street to the other. There was no evidence whether the defendant made any attempt to prevent this travel, and none that it permitted it except that it existed in fact. There was also evidence that many people went over the platform on the east side of the station, and some along or between the railroad tracks, when going to Lincoln Square from points northerly of the station.

The plaintiff for seven weeks previous to the accident had walked over the platform twice daily each way in going between her home and the place where she worked. On the night of the accident, she was walking home from·the shop by her usual route, leaving the shop at six o'clock with two other working girls. It was very dark. They walked on the sidewalk on the west side of Prescott Street until they came to the footpath ; then walked over the path across Prescott Street and the station grounds to the ·north end of the platform, and then a short distance along the platform on the west side of the station, when she fell into a hole or opening which she did not before know of and did not see, and so was injured. The opening into which she fell was made by the raising of a trap door, which formed part of the platform, and which opened upon stone steps leading to the cellar of the station building. The trap door had been open for an hour or more before the accident, and the opening was not guarded by any barrier or light, and there was no person in charge of it, nor other warning. The plaintiff knew that this was a railroad passenger station,

had seen teams drive up to the platform to get passengers and trunks, and had been to this and other passenger stations constructed in a similar manner with platforms on the outside. The question is whether, upon the facts shown, the plaintiff was entitled to go to the jury, a verdict for the defendant having been ordered in the Superior Court.

It cannot be said, as matter of law, that the plaintiff was a trespasser. She knew that the place where she was travelling was not a public way, but the platform of a railroad passenger station; she was not a passenger of the railroad, and had no business to do at the station, but was merely using the station grounds and platform as a short cut to facilitate her passage home. Whether her act was or was not a trespass depends upon the attitude of the defendant toward her and those who were accustomed to use the station in a similar manner. It may properly be inferred that the defendant knew of, and passively allowed, the plaintiff and the public to pass at their pleasure across the station grounds and the platforms, from one street to the other. On the other hand, it cannot be said that any invitation or inducement was extended by the defendant, to the plaintiff or to the public, to use the station grounds and platforms as a short cut in travelling from street to street, or for any other purpose than that for which they were designed and adapted in connection with the railroad. It was apparent that the place was a railway passenger station, and not a way for foot travel. No arrangement or fitting of the grounds or platform is shown which would convey to any one the idea that the platform was a part of Prescott Street or of Lincoln Square, or of any public way, or that those in charge of it invited its use for other than railroad purposes. The platform was not contiguous to Prescott Street; it led from Lincoln Square to the station building, and did not connect the two streets. It was obviously a part of the railroad station, and for the use of railroad passengers. The use for which it was apparently designed required the land to be left open and easily accessible from the public streets. Besides this, the plaintiff knew that it was a passenger station, and was not in fact induced to believe that she was walking over a public way. The fact that the defendant made no attempt to prevent travel across the station grounds

and platform, as a short cut between the public streets, was not an invitation to use them for that purpose. *Galligan* v. *Meta-comet Manuf. Co.* 143 Mass. 527. *Reardon* v. *Thompson*, 149 Mass. 267.

It follows that the plaintiff's rights are to be determined upon the theory that she was neither a trespasser nor a person induced or invited by the defendant to enter its premises, but a licensee merely, knowingly using the defendant's land and structures for a purpose solely in her own interest, and for which she knew they were not intended, and entering upon them without invitation and without right, by her voluntary act, and with the bare sufferance of the owner.

The case is not one of a concealed peril, or of a trap designedly laid. The exceptions do not show that the door was not easily distinguishable from the platform of which it formed a part, and the use for which it was designed must have been apparent upon inspection.

The general rule is, that a bare licensee has no cause of action on account of dangers existing in the place he is permitted to enter, but goes there at his own risk, and must take the premises as he finds them. *Reardon* v. *Thompson*, 149 Mass. 267. *Parker* v. *Portland Publishing Co.* 69 Maine, 173. No duty is cast upon the owner to take care of the licensee, or to see that he does not go to a dangerous place, but he must take his permission with its concomitant conditions and perils, and cannot recover for injuries caused by obstructions or pitfalls. *Hounsell* v. *Smyth,* 7 C. B. (N. S.) 731. *Batchelor* v. *Fortescue,* 11 Q. B. D. 474. *Sweeny* v. *Old Colony & Newport Railroad,* 10 Allen, 368, 372. " An open hole, which is not concealed otherwise than by the darkness of night, is a danger which a licensee must avoid at his peril." Holmes, J., in *Reardon* v. *Thompson*, 149 Mass. 267, 268. *Sullivan* v. *Waters,* 14 Ir. C. L. 460, 475.

The plaintiff cannot complain that the defendant, in lawfully using its station and appliances as they were apparently designed and adapted to be used, so changed their condition without her knowledge as to make the place dangerous to her when she attempted to use it in a manner inconsistent with the use which the owner chose to make of it. The defendant was under no obligation to her to light the place, or put up a barrier, or to

give warning that the condition of the door made it dangerous for her to attempt to pass. The opening was not a trap, but an ordinary and usual means of access to a cellar, and, so far as the plaintiff was concerned, the defendant owed her no duty to keep it closed rather than open. *Metcalfe* v. *Cunard Steamship Co.* 147 Mass. 66. *Heinlein* v. *Boston & Providence Railroad,* 147 Mass. 136. The fact that the jury viewed the premises makes no difference in the power of the court to deal with the case upon the evidence presented in court, or with our decision of the question whether the justice presiding at the trial was right in directing a verdict for the defendant.

*Exceptions overruled.*