JAMES H. PELTON v. CHARLES SCHMIDT ET AL.

| 97 | 231 |
|---|---|
| 105 | 350 |
| 97 | 231 |
| 112 | 98 |
| 97 | 231 |
| f138 | 257 |

*Negligence—Dangerous premises—Invitation—License—Liability of owner.*

The plaintiff, a teamster, after delivering some merchandise at the back door of defendants' store, started towards the desk near the middle of the room to get a receipt, and was injured by falling through a trap-door into the cellar.    The evidence did

not tend to show an invitation, express or implied, to pass to the desk, there being no act which led the plaintiff to believe that defendants intended him to go there, and no evidence of acquiescence in such practice; but it did appear that the intention was that the goods should be received by defendants at the door, and there be examined and receipted for, and that the practice was for the truckmen to make their presence known by calling, when no one was at the door. And it is held that the court should have directed a verdict in favor of the defendants.

Error to Kent. (Grove, J.) Argued April 19, 1893. Decided October 27, 1893.

Negligence case. Defendants bring error. Reversed. The facts are stated in the opinion.

*Henry J. Felker* (*Uhl & Crane*, of counsel), for appellants.

*Morse, McGarry & McKnight*, for plaintiff.

HOOKER, C. J. The plaintiff, a teamster, after having delivered some merchandise at the back door of defendants' store, started towards the desk near the middle of the room to get a receipt, and was injured by falling through a trap-door into the cellar. The floor drawing on next page will explain the situation of the premises.

As appears from the drawing, the trap, when not in use, was covered by double doors, a hole being left to permit the doors to shut around the pulley rope which was suspended there. This pulley was used to raise and lower articles from and into the cellar below, and usually hung above the trap, which was in the end of the store, and in close proximity to the back doors, where it was the custom to receive goods. The plaintiff was familiar with the premises, having been there a number of times. He testified that he might have been there 100 times, and might not.

On the day of the accident, goods had been received, and were piled in front of the back doors, within the store, on the east side of and up to the edge of the trap-door, and one of the defendants and some clerks were engaged in lowering them into the cellar. After lowering some down, they had all gone below to remove them, when plaintiff drove to the back door with some boxes of soap, which he put into the store, and then started to get a receipt, as stated. The goods constituted a barrier to a direct route to the desk, and plaintiff went west for a few feet, between the goods and the wall, when, turning sharply around the corner of the pile of goods, he stepped into the hole. He testified on cross-examination as follows:

"*Q*. How many doors are there to this trap-door?

"*A*. I don't know.

"*Q*. Do they have any elevator in there?

"*A*. I don't know that, either.

"*Q*. Do they have a rope and tackle above it?

"*A*. I don't know, sir.

"*Q*. How?

"*A*. I don't know; I never was in there.

"*Q*. Did you ever look for anything?

"*A*. No, sir; I never looked for any.

"*Q*. Did you ever notice how they got their goods down, from the store floor, below?

"*A*. I never did. I never knew whether they put them down there, or what they did. I never knew that they put their goods down cellar."

He further said that it was dark in there. He says that he gave no notice of his arrival, but, in a hurry to go about his business, he took his delivery book, and started for the desk to get it receipted, having to go around the pile of goods, as stated. Witness further said:

"I saw the passage-way, yes.

"*Q*. Could you not see there was a hole there,—in place of a passage-way there was a hole there?

"*A*. No, sir.

"*Q*. Did you look to see whether there were any holes there, or anything of the kind?

"*A*. No, sir; I did. not.

"*Q*. Were you looking at your paper or your book?

"*A*. No, sir; I was not.

"*Q*. What were you looking at?

"*A*. I was looking at the front end of the store.

"*Q*. What were you looking there for?

"*A*. To get up to the desk to get a receipt for my goods.

"*Q*. Weren't you looking where you were walking at all?

"*A*. It was not necessary.

"*Q*. It was not necessary, and yet it was piled up there with boxes and goods and baskets?

"*A*. I looked to see that I didn't stumble over anything."

The drawing shows that in the extreme south-east corner of the store, and at a point most remote from the street, defendants had provided for the reception of goods through an alley, and a doorway some feet above the ground, without steps by which to enter it. To dispose of the bulky goods to be stored, the cellar was used, and a trap-door was provided, not immediately in front of the doors, but at one side of them. It was beyond the back end of the counters, and our attention is not called to any evidence that customers were ever invited to go there, or that they ever did so, or that it could possibly be approached from the front without being open to observation. It would be difficult to suggest a safer place for a trap-door, which counsel for the plaintiff concede defendants' right to have and use.

What duty did the defendants owe the plaintiff? He was a teamster, who delivered goods there, for which it was his custom to require a receipt. He says that he was unfamiliar with the premises, and did not know of the existence of the hatchway or of the pulley, or of the practice of defendants in disposing of goods delivered at the door. He does not say that he was ever invited to enter the door, or to go to the desk for a receipt. He does not state that he had previously done so, or that any other

person had been there.    Aside from the inference that employés of defendants would naturally go there, we find nothing to indicate that any one was expected to walk through the store from the back door to the desk, or that an invitation was extended to any outsider to do so. Counsel for plaintiff, in their brief, cite pages of the record upon this point.    Page 64 is silent upon the subject, while upon page 75 the witness is interrogated upon the course a person would necessarily take if he wanted to go from the door to the desk.    A mistake in quoting from page 84 makes it appear that " plaintiff had always taken his book, and gone through.    If we were not in the rear end of the store, he probably called for some one."    The record from which this is taken is as follows:

"*Q.* This man had delivered goods before at that door, had he not?

"*A.* Mr. Pelton?

"*Q.* Yes.

"*A.* Yes, sir.

"*Q.* He had always taken that book and gone through?

"*A.* If we were not in the rear end of the store, he probably called for some one.

"*Q.* He probably found some of you there, and you receipted the book?

"*A.* Yes; we generally make it a point to look at the goods before we sign them.

"*Q.* Is it not a fact that that trap-door, when shut, is walked over continuously from that door, going back and forth?

"*A.* It is if they take the crossing.    If they do not go right straight south and west they cross it,—if they take a cross-cut.

"*Q.* If you take a cross-cut, anybody could go right across it?

"*A.* Yes."

No other testimony is pointed out which is said to support this claim.

Counsel seem to concede that, unless the plaintiff was there through an invitation or allurement, defendants can-

not be held liable; themselves pointing out the difference between such cases and a case of a mere naked license, and quoting from the case of *Sweeny v. Railroad Co.*, 10 Allen, 373, as follows:

"The general rule or principle applicable to this class of cases is that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement, or inducement, either express or implied, by which they have been led to enter thereon. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition." See, also, 37 Cent. Law J. 52, 216; *Flannigan v. Glucose Co.*, 11 N. Y. Sup. 688; *Redigan v. Railroad Co.*, 155 Mass. 44; *Plummer v. Dill*, 156 Id. 426; *McCarthy v. Foster*, Id. 511.

The same doctrine is followed in *Bedell v. Berkey*, 76 Mich. 435, and is clearly distinguishable from *Engel v. Smith*, 82 Mich. 1, where the common practice was for people generally, including the plaintiff, to enter at the back door.

We do not find evidence that shows an invitation to pass to the desk, either express or implied. We discover no act which led plaintiff to believe that defendants intended him to go there, and we find no evidence of acqui-

escence in such practice, for we cannot find that it was shown to have been done before by this plaintiff or any other truckman. But there is proof to show that the intention was that the goods should be received by defendants at the door, and there examined and receipted for, and that the practice was for the truckmen to make their presence known by calling, when no one was found at the door. Not only was there no invitation, but we discover nothing that implies even a license to cross the store to the desk. The plaintiff saw that the desk was over there, and that there was apparently a passage, and so he went, without invitation. We think the court should have directed a verdict for the defendants.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.