CHARLES C. AMERINE v. JOHN PORTEOUS AND THOMAS HUNTER.

*Negligence—Defective elevators.*

Defendants were proprietors of a five-story building, and had provided, as a conveyance by which persons could reach the upper floors, a passenger elevator, which started from the street floor, while a freight elevator ran from the basement to the upper floors.  Plaintiff, who was an agent for the sale of lubricating oil, being desirous of seeing the defendants' engineer, went from the street floor, *via* a stairway, to the basement, and, upon finding that the engineer was upon the fifth floor, without any invitation so to do, took passage on the freight elevator, and was injured.  And, in a suit brought to recover damages for said injuries, it is held that the invitation extended from the defendants to take the passenger elevator was in its nature express; that the situation negatived any possible inference of an invitation to take the freight elevator; and that the trial court did not err in directing a verdict for the defendants.[1]

Error to Wayne.   (Hosmer, J.)   Argued April 17, 1895.   Decided May 21, 1895.

---

[1] As to liability for injuries to passengers on elevators, see note to *Mitchell v. Marker* (U. S. C. C. App. 6th C.), 25 L. R. A. 33.

Negligence case.  Plaintiff brings error.  Affirmed. The facts are stated in the opinion.

*Griffin & Warner*, for appellant.

*Dickinson, Thurber & Stevenson*, for defendants.

McGRATH, C. J.  Defendants are engaged as retail dealers in dry goods in the city of Detroit.  They occupy a building several stories in height.  From the street floor in the front part of the store a passenger elevator is provided to reach the upper stories.  From the same street floor a stairway is also provided to reach the upper floors, and the basement also.  The passenger elevator does not connect with the basement.  In the rear of the store is a freight elevator, running from the basement to the attic floor.  Plaintiff was engaged in selling lubricating oils.  He first called at the office a few months before the accident, when he was directed to the engineer, one Herz.  He was then told to take the stairway to the basement, and did so.  On the 8th day of October, 1892, he went by the stairway to the basement, to see the engineer.  He says:

"Mr. Herz was not there.  His brother said he was up on the fifth floor, and that he might be down presently. Right after that the elevator came down to the basement, and it was just about to go up, and I said, 'Well, I guess I will go up there.'  John Herz [a brother of the engineer] said, 'I think he will be down soon, and you might as well wait.'  I said, 'Well, I may wait five minutes, and I may wait an hour, and, as I have not the time to spare, I will go up and see him.'  I stepped onto the elevator, and the boy closed the door to the entrance, and we started up.  When stepping on the elevator, the boy let me pass to the west side of the elevator platform. [The witness here identified a model or plan of the elevator and elevator shaft.]  The entrance to the elevator was on the north side.  I went in at the lower or basement door.  The elevator boy stood near the opening. The boy stepped back, and let me step here (on the west side of the elevator), and, when I stopped, my back was

to the west side of the elevator,—the open side. Then he closed the door, and we started up, and he carried the elevator up to the third floor, and stopped and let on a woman, and I think a boy. At least, I know there was a woman stepped onto the elevator at that floor. This was the third floor. When she stepped onto the elevator, she moved over. The boy let her pass between him and this corner, this side of the entrance, in my direction; and in doing so I moved back to make room for her, and my left foot went over the edge of the platform; I don't know how many inches, but not far enough for me to notice it or for my foot to drop down. When she got on, the boy closed the door, and the elevator ascended. My left foot was on that side (west side), and just before we got to the third floor my heel was caught between the elevator platform and a joist, and my foot swung around, and closed up between the joist and the platform of the elevator."

Again:

"I was not invited to go up on the elevator that morning. Mr. Herz's brother says, 'If I were you, I would not go up to see him, because he will be down here presently.'"

He testifies that he knew that this was a freight elevator, and that there was a passenger elevator in the front part of the store. He says that he had been invited by Herz, on two or three occasions, to go up in this elevator from the basement floor to the first or store floor, but on these occasions Herz and himself would go together to get a cigar or a drink . He had not before the occasion of the injury been above the first or store floor on this elevator. Testimony was offered tending to show that others had been in the habit of riding in this elevator, but the testimony was confined to other agents having business with the engineer and to employés.

We think that the trial court was right in directing a verdict for the defendants. Defendants had made ample provision for the transportation of persons to the upper floors of the building. Plaintiff chose to ride in an elevator which to his knowledge was provided for

another purpose, knowing at the same time that a passenger elevator had been provided and was in operation. The invitation extended from the defendants to take the passenger elevator was in its nature express, and the situation negatived any possible inference of an invitation to take the freight elevator. See *Pelton v. Schmidt*, 97 Mich. 231; *Sweeny v. Railroad Co.*, 10 Allen, 373.

The judgment is affirmed.

The other Justices concurred.