The action below was for damages for personal injuries. The plaintiff below recovered a verdict for twenty-five thousand dollars, and in due course judgment was rendered thereon. The cause is now before this court on proceedings in error, a number of errors being assigned.
The facts may be briefly stated as follows: plaintiff claimed to have sustained personal injuries while walking with her sister in the yards of defendant company in Dayton, Ohio. The path lajr between the north and south bound main tracks of the company. The yards of the company extended from Wash ington street to a point to the south of Bohlander .avenue and are oh an embankment of several feet. At the place where the accident occurred, in addition to -the main tracks, there are several side-tracks to the west of said main tracks. At the time of the accident a freight train was standing on the north bound main track a considerable distance south of Washington street. This train was destined to Lima, Ohio, and the engineer had brought it to a stop because of trouble he was experiencing with the throttle of the engine. The engineer had stepped from the cab and was engaged in work at the far. side of the engine, and did not see the plaintiff nor did he know of her approach. The head brakeman had gone to the cab for the purpose of getting a drink of water and the fireman was also in the cab. Plaintiff claims he was on the west side and saw her approach. *599 The fireman, however, claims he was on the other side of the engine watching the engineer. Plaintiff claimed that when she got to a point immediately opposite the cylinder cocks defendant “suddenly, carelessly, negligently and willfully and without warning or notice .to the plaintiff caused to be emitted a thick, dense, scalding and blinding volume of steam” and that “in order to avoid injury thebefrom plaintiff jumped back and away from the said locomotive, whereupon and while plaintiff was so enveloped in steam as aforesaid, through the negligence and carelessness of the agents, servants and employes of this defendant * * * she was immediately struck and run over by a switch or yard engine which was backing down on another track.”
There was testimony tending to prove that for years the space between the two sets of tracks had been used as- a path by the public; but that the railway company maintained warning signs on said property, one of which was on the east side of the right of way. There were two warning signs near Washington street, and there were, two warning signs on each side of the right of way between Bohlander and Washington streets facing the street leading up to the right of way of the railway. These signs read:
“Dangerous. Keep off. ' Private property. Persons not employes of the C., H. & D. Ry. Co. must -not trespass. General Manager. ”
There was testimony -tending to • show that these signs had become dirty .and weather stained and difficult to read at long range. There was testimony•-tending to show that, path had been used openly by hundreds of people every day for more than ten years without let or hindrance, and without protest; and there was also testimony that officials did occasionally protest but not to the knowledge of the plaintiff.
Negligence and willfulness are charged and the testimony with reference to those charges will be hereafter referred to.
One of the errors assigned and upon which particular emphasis is laid is that the .court notwithstanding the teaming signs failed to declare as a matter of law that plaintiff was a tres *600 passer, but .allowed -the jury to determine whether or not the railway company, by its conduct for a long period of years, had waived the prohibition 'contained in such warning signs, and extended permission to the public and the plaintiff, as -one of the public, to use the path as a foot-way. We are of opinion that the action of the court in thus submitting to the jury the question of the acquiescence in a public use of the path in question, notwithstanding it was a longitudinal use, and notwithstanding the existence of learning signs, was proper and justified by the Ohio authorities, as well as by decisions of other states. Harriman v. Railway Co., 45 O. S., 11 (boys walking along the tracks); Davis v. Railway Co., 58 Wis., 646 (plaintiff injured while walking along the right of way); Railway Co. v. Workman, 66 O. S., 509; R. R. Co. v. Kinz, 68 O. S., 210.
In Felton v. Aubrey, 74 Fed., 350, the court say, p. 359 (Lurton, Hammond and Taft, JJ.):
"But if it (the railway company) permitted the public for a long period of time to habitually and openly -cross its tracks at a particular place or use the track as a pathway between particular localities, it can not say it was not bound to anticipate the presence of such persons on its track, and ivas- therefore not under obligation to 'operate its trains with .any regard to the safety of those there by its license. ’ ’
The "place” there in question was an open common or space which was crossed in every direction by people residing in the neighborhood, and there were also warning signs inscribed "no trespass,” but .the question of acquiescence ivas nevertheless s-ub: mitted to the jury. On the question of the warning signs the court say, p. 357:
"On the -other hand the facts that the company * * * maintained a warning sign against trespassers are significant as tending to show that it purposed to maintain the exclusive use.”
See also Railway v. Brookes, 54 S. W., 1056; Hanson v. Railway, 105 Cal., 379.
But whether the court ivas right or wrong in thus submitting this question, is not material because of .other views we are compelled to take of the case. ' If plaintiff below, defendant in er *601 ror, was- a trespasser shé assumed tbe risk of injury from .the condition of the premises, and defendant railway company owed her “the duty to be careful not to intentionally injure her by bringing force to bear upon her.” See Railroad Co. v. Harvey, 77 O. S.; Redigan v. Railroad, 155 Mass., 44-47-48. In other words it owed her .the duty not to willfully, wantonly or intentionally injure her. It owed her the duty not to inflict injury upon her by means of its active intervention which by due care it could avoid. Redigan v. Railroad, cited in Railroad v. Harvey, supra.
If the plaintiff below was ,a licensee, with permissive right to use the premises of defendant railroad company, the latter owed her the duty to exercise ordinary care so that no injury would befall her through any new or added peril. If .a bare licensee, that is, a licensee by permission or sufferance only (not a licensee by special invitation or enticement or allurement or inducement;, for distinction see Bork v. The Cincinnati Gas & Electric Company, General Term, Superior Court, 5 N. P. — N. S., 526), may be said to assume the risk of hidden dangers arising from the condition of the premises or the risk of injury 'arising from the acts of persons other than .the proprietor, he does not assume •the risk of danger or peril added by the proprietor (Railroad v. Aller, 64 O. S., 183). While no recovery was permitted in Railroad v. Alter, it was because the defect complained .of was one in construction .and had existed for several years prior to the .accident.
In the case at bar the injury was not due to any hidden danger or pit-fall, nor was it due to a structural defect; the act complained of w.as .alleged to be a willful or wanton .act of defendant after plaintiff came .on the premises; or it is claimed to be a case where defendant company interposed a neiv danger ivithout reasonable precaution'against injury therefrom.
If the evidence adduced measures up to such a state of facts, as we understand the authorities of this state, the plaintiff ought to be entitled to recover. But before the verdict can be permitted to stand it must appear that the willfulness or wantoness as charged, or tbe negligence charged, was the act of this cle *602 fondant -or of persons for whom in law defendant railroad was-responsible. That is to say it must not appear to be the acts of “■other persons” or the acts of those for whom in law defendant is not-responsible.
As the act complained of is alleged to have -been done by the agents or servants of defendant railroad company, we must take up for consideration the cases in Ohio that bear on the liability of the master for willful, wanton or negligent acts of his servants.
The rule as we understand it to obtain in this state, with reference to the master’s liability, may be summarized thus: that when a servant does an act within the scope of his authority, whether the authority be express or implied or inferred from the general course of business, the master is liable for the consequences of the act, whether said act was done negligently or willfully. Railway Co. v. Wetmore, 19 O. S., 110; Railway Co. v. Young, 21 O. S., 518; Healey v. Railroad, 28 O. S., 23; Stranahan v. Coit, 55 O. S., 398; The Nelson Business College v. Lloyd, 60 O. S., 448; Railway v. Little, 67 O. S., 91; Whistler v. Cowen, 4 C. C. (N. S.), 625, affirmed in Supreme Court, 70 O. S., 514.
Since the primary act complained of in this case was the turning on of the cylinder cocks, causing the steam to be suddenly emitted, the burden was on the plaintiff to show that an employe -of defendant company turned 'on said cylinder cocks willfully or negligently, and that the employe who did it was either expressly or impliedly Authorized or that the authority was inferred from the course of his business or employment so to do. And it was for the jury to say under proper instructions whether, if the servants of defendant opened the cylinder cocks, the act, whether willfully or negligently done, was in the course of their employment or within the scope of their authority. Nelson Business College v. Lloyd, 60 O. S., 444-448.
The jury it will be observed, in answer to defendant’s fifth interrogatory, found that the cylinder cocks were opened- by the “fireman or head brakeman.” This -answer in itself shows that the jury could not say with positiveness which one qf. those *603 men actually turned-On the cylinder cocks, and as a matter of fact the only basis for the answer would seem to be the circumstances that these men were in .a place where .they might or could have turned them on. But since the verdict is necessarily based upon a finding that Q-ne or the other did the act complained of, it becomes necessary to examine the evidence and ascertain whether in fact, or in law, either was acting in furtherance of the master’s business, and in the scope of his employment, in turning on said cylinder cocks, if either did turn them on, or whether either had authority, express or implied, to open the cylinder cocks at that time.
There is no evidence in this ease showing any general or express authority conferred on either the fireman or head brakeman to handle the mechanism of the engine of which the cylinder cocks are a part. That- opening of the cylinder cocks was the engineer’s duty, except when he delegated that duty to others, including- the fireman or head brakeman is clear. It appears uncontradicted that “whenever t-he engineer thought it necessary he would order the fireman or brakeman to open the same, or he would ask .them to open them when he was on the ground.”
The engineer was on the ground at .the time .the accident occurred (and the jury so found), but -the engineer testifies that, prior to stepping -off the cab, he himself had opened the cylinder cocks and in this he is corroborated by the fireman and brakeman. This testimony is uncontradicted. To presume that the fireman opened the cylinder cocks to frighten the girl was wholly unwarranted by the evidence. To presume that the fireman or brakeman, .if they did the act, did it in furtherance of the master’s business, because of a presumed necessity existing “to save the engine, ’ ’ or to presume .that the fireman .or head brakeman had authority to open them because of a presumed necessity then and there existing, would be to found one presumption on another, which is fatal under established rules (Manning v. Ins. Co., 100 U. S., 639; Bank v. Stewart, 114 U. S., 224; Cunard Steamship Co. v. Kelley, 126 Fed., 610; Weaver v. Linneman [Hosea, J.], 4 O. L. R., 424, affirmed by the General Term of the Superior Court). It was not shown by plaintiff below *604 that it -was incidental to the fireman’s duty to handle the cylinder cocks, and certainly it does .not appear to have been within the brakeman’s line of duty. The engineer, fireman and brakeman agree, and it is uncontradicted, that no one had authority to open the cylinder cocks save the engineer; and the evidence establishes that the course of business required special instructions by the engineer in every case whenever the cylinder cocks were to be opened by others than himself. In other words, it appears that the fireman and head brakeman had no authority to open the cylinder cocks save when special orders were given by the engineer, and in this instance no such special orders had been .given.
If it were conceded that the fireman’s duties implied the power and authority to handle the mechanism of the engine, including the cylinder cocks, and if as a matter of- law it could be said that he was in charge of the engine and its mechanism, certainly no such power or authority could be attributed to the brakeman, and there-is no evidence tending to show such authority. The duties of .a brakeman as a matter of common knowledge are separate and apart from and have nothing to do with the handling of -the engine or its mechanism. So that even if it were to be held that the fireman was the authorized agent of defendant, with reference to the handling of the cylinder cocks, the same could not be said of the brakeman. Hence the finding of the jury that the cylinder cocks were opened “by the fireman or the head brakeman” (fifth interrogatory), presents a dilemma, upon one horn of which the defendant might be liable and upon the other could not he under .any possible view of the ease.
While therefore it was error to omit to charge on the question of “authority” there is, -as we read the record, practically no evidence upon which the jury could have based ,a finding of authority as to either the fireman or brakeman save mere conjecture. This as already stated could never be made the basis of actionable negligence. See, also, Leonard, v. Miami Co., 148 Fed., 827-829.
Railway Co. v. Shields, 47 O. S., 387, earnestly relied on by *605 defendant in error, has no application .to the state of facts here presented. That was a case involving the custody or control of a “dangerous agency.” A steam engine or locomotive, at rest, upon its own right of way, in its own yards, under circumstances such as were present in the case at bar, is certainly not to be considered a dangerous agency, and its control or custody while so situated bears no analogy to the conductor’s careless custody of .torpedoes, as in the Shields ease. In that ease the conductor, who was entrusted' with the custody of the' -dangerous agency, had carelessly suffered a torpedo .to get out of his control. The wrong was incidental to Ms functions iand accordingly within his 'employment, and was therefore -imputable to the master. In the case .at bar -the engineer who had charge of the engine had not carelessly relinquished his control or custody of the .engine, nor as ia matter of fact is that the negligence .pleaded (B. & O. R. R. v. Lockwood, 72 O. S., 586)/ The engine was.still in his control though he was on the ground doing certain work in connection with its mechanism.
A close analysis of all the other Ohio cases relied on by the defendant in error will not in our judgment warrant the implication of authority in either the fireman or brakeman to turn on the cylinder cocks. This being so, neither the willful, wanton or negligent act of either, would make the defendant liable. The general verdict and the special findings which involve the question of authority were for these reasons not only against the weight of the evidence but were practically unsupported by airy evidence.
If it were necessary to add to what has already been said, we think the charge on the question of proximate cause was erroneous and prejudicial. While it is true willfulness was charged, it must not be forgotten that negligence was charged, both as to the acts of those in “charge” of the freight engine and the operatives 'of .the switch engine which ran over the plaintiff below. ’Assuming there was no evidence of willfulness or wantoness the question of proximate cause of the injury was a mixed question of law and fact for the jury. Railway Co. v. Liidtke, 69 O. S., 384.
Harmon, Colston, Goldsmith & Hoadly and W. D. Corn, for plaintiff in error.
Stricker & Johnson, for defendant in error.
The court it will be observed expressly eliminates as a matter of law (no doubt through inadvertence) the acts of the operatives of the switch engine as being the proximate cause. This left the alleged acts of the operatives of the freight engine alone -to be considered as a proximate canse, notwithstanding the fact that defendant in error wgs injured wholly by the switch engine, and the operation of the switch engine and its relation thereto must necessarily be considered in determining this mixed question of law and fact. The charge was therefore erroneous. Furthermore, unless the master is to be held liable for all the possible consequences of the turning on of the cylinder cocks, then we think in view of the negligence here charged and the circumstances the court ought to have instructed the jury oh the rule with reference to the contemplation of consequences in determining the question of proximate cause.
For ithe reasons given we are of opinion that the verdict must be set aside and the judgment reversed >and it is so ordered. Judgment reversed.