Chavez v. Torlina.

ant's motion to quash, and arguments of counsel, sustained said motion and discharged the defendant.

[No. 1165, January 19, 1909.]

EDUARDO CHAVEZ, Appellee, v. JOHN D. TORLINA, Appellant.

### SYLLABUS.

1. The owner of an encroaching building is a licensee where the owner of the land agrees that the former may continue to encroach until the owner demanded possession of the land encroached upon.

2. The license ceased with death and was not transferable being a personal privilege of the licensee.

3. The court permitted plaintiff an amendment of the replication after trial, but before judgment and afterwards found in defendant's favor on the issue involved. On defendant's appeal plaintiff filed no cross-appeal, so that the finding could not be reviewed. Held, that the ruling as to the amendment was harmless as far as the defendant was concerned.

4. Appellee sought to establish his ownership by hostile possession. He thereby disclaims possession as a tenant or licensee, the two positions being inconsistent with each other, and cannot be maintained at the same time.

5. Appellant telling appellee, who is rebuilding wall encroaching on appellant's land but held adversely by appellee: "Your wall is on my ground. You cannot throw rubbish in this yard—you throw your rubbish on your own

Chavez v. Torlina.

side," is of too casual a nature to be regarded as sufficient to suspend the operation of the law of adverse possession.

6. Where appellee relies upon an ownership and possession hostile to the true owner, there is no ground of liability of the true owner. If appellant was a stranger to the title it would be different.

7. An entry on lands of another without right and not in subordination to the title of the owner is a mere trespass, and no tenancy is created thereby.

8. If the relation of landlord and tenant did not exist between owner of building encroaching and the owner of the land, it was not necessary for owner of land to give owner of building notice to quit and remove the encroaching wall from the land.

9. Nor was notice necessary to revoke the license if owner of building were held to be a licensee.

10. The owner is not liable to a trespasser, or one who is on his property by mere permission or sufferance, for negligence of himself or agents.

11. Where appellant notified the appellee that appellee's wall was upon appellant's ground at the time appellee was preparing to rebuild the fallen wall, the appellee being a trespasser upon appellant's ground, no damages could be recovered for the rebuilding of the wall.

Appeal from the District Court for Bernalillo County, before IRA A. ABBOTT, Associate Justice. Reversed and remanded.

W. C. HEACOCK and LOWELL LOUGHARY, for Appellant.

Allegations of title are material in actions respecting personalty as well as in those concerning realty, and when made must be strictly proven, any material variance between the allegations and the proof thereof being fatal. Enc. P. & P., vol. 21, pp. 712, 740; Great Falls Co. v. Worster, 15 N. H. 460; St. Joseph Ice Co. v. Bertch, 71 N. E. 56 (58); Davis v. Jewett, 13 N. H. 90 (91); C. L. 1897, sec. 2685, sub-secs. 32, 49; Ogden v. Moore, 95 Mich. 290 (294); Bangor O. and M. R. R. Co. v. Thomas, 49 Me. 9; White v. Brash, 73 Pac. 445; Cunzie

v. Wixom, 39 Mich, 384; Hudson v. Swan, 83 N. Y. 552.

"A license is generally so much a matter of personal trust and confidence that it does not extend to any one but the licensee. The death of either party' will, of itself, revoke it. So would a transfer or alienation of the interest of the licenser or licensee in the subject matter of the license." 1 Wash. Real Prop. (4 ed.) 632; DeHorn v. U. S., 5 Wall. 72 U. S. 599; Cook v. Sterans, 11 Mass. 533; Bleadsdell v. R. R. Co., 51 N. H. 483; Smith v. Stewart, 6 Johns, N. Y. 45; Jackson v. Taylor, 2 Johns. 444; Cooper v. Adams, 6 Cush. 89; McLeran v. Benton, 73 Cal. 340; Ruggles v. Leasure, 24 Pick., Mass. 187.

"An encroachment is deemed a private nuisance which the adjoining owner, who is thereby deprived of the complete enjoyment of his land, may abate." Cyc. L. & P., vol. 1, pp. 772, 773; Myers v. Metzlar, 51 Cal. 142; Beekman v. Jones, 42 Hun.; N. Y. Sup. Ct. 328; Harrington v. McCarthy, 169 Mass. 492; Little v. Hockett, 116 U. S. 366; 21 Enc. of Law 584, and authorities cited. Candelaria v. A., T. & S. F. Ry. Co., 6 N. M. 266 (270).

A license to build or occupy does not carry with it the right to rebuild. Carleton v. Redington, 21 N. H. 291 (307); Cook v. Stearns, 11 Mass. 533; Price v. Case, 10 Conn. 375 (383).

Trespassers and mere licensees take the premises as they find them with their surrounding perils; the only duty owed them by the owner is to avoid wanton or malicious injury. Current Law, vol. 4, p. 769; Cooley on Torts, ed. 372, 384, 792, 794; Pittsburg Ry. Co. v. Bingham, 29 Ohio St. 372; Minor v. Sharon, 112 Mass. 487; Victory v. Baker, 67 N. Y. 368; Gellispie v. McGowan, 100 Pa. St. 144; Gills v. Penn. Ry. Co., P. F. Smith, Pa. 141; Vanderbeck v. Hendry, 34 N. J. L. 472; Fairplay Hyd. Mining Co. v. Weston, 67 Pac. 160; Hadley v. Hagerty, 59 Am. Dec. 736; Mason v. Mo. Pac. Ry. Co. 41 Am. Rep. 405; Clark v. Mich. Ry. Co. 67 Am. St. 444; Reckhow v. Shank, 43 N. Y. 541; Akers v. Chicago, St. P. & Ry. Co., 60 N. W. 669; Marti v. Knapp, 57 Iowa 342; White v. Brash, 73 Pac. 446; Albert v. New York, 75 App. Div. 556; St. Joseph Ice Co. v. Bertch, 71 N. E. 56; Ill. Cent.

Ry. Co. v. Godfrey, 22 Am. Rep. 112; Letts v. Kessler, 42 N. E. 765 (767).

"A tenancy at will cannot arise without an actual grant or contract." 1 Wash. Real Prop., 4 ed. 581, 616.; 12 Enc. Law 661, 662; Keys v. Davis, 101 Ind. 75; Jackson, v. Tyler, 2 Johns, 444; McLeran v. Benson, 73 Cal. 340; Sedg. & Waite on Trial to Title, secs. 375, 387; Kunzie v. Wixom, 39 Mich. 384 (388); Simms v. Cooper, 5 N. E. 726.

In actions for damages growing out of negligence, the particular acts or omissions which constitute negligence must be set forth; and any material variance between the allegations and the proof is fatal to a recovery. Enc. P. & P., vol. 14, p. 342; Buffington v. Atlantic & Pac. Ry. Co., 64 Mo. 246; Waldheimer v. Hannibal & St. J. Ry. Co., 71 Mo. 514; Edners v. Hannibal & St. J. Ry. Co., 72 Mo. 212; Gurley v. Missouri Pac. Ry. Co., 93 Mo. 445; Elliott v. Carter White Lead Co., 73 N. W. 949; Jenkins v. Kirtley, 79 Pac. 675; McCain v. Louisville & N. R. Co., 18 N. E. 537; C. L. 1897, p. 700, sub-secs. 78-80.

A finding of fact outside of the issues made by the pleadings will not support a judgment. 8 Enc. P. & P. 945 and notes; Male v. Schaut, 69 Pac. 137, 138; Gomanche v. School Dist., 65 Pac. 301; Newby v. Myers, 24 Pac. 971; Johnson v. Hosford, 110 Ind. 572; C. L. 1897, sec. 2685, sub-secs. 62, 96.

"If the new evidence tends to establish a new fact not in dispute at the trial, such evidence is not cumulative merely because it tends to establish the same claim or defense." Enc. P. & P. 791, and authorities cited; Alexander v. Solomon, 15 S. W. 906; People v. Holmes, 52 N. Y., supp. 939; Winfeld Building and Loan Co. v. McMullen, 53 Pac. 481.

E. V. CHAVEZ for appellees.

The law is very liberal in allowing amendments to the pleadings. C. L. 1897, sec. 82.

The law of this territory only requires that a cause of action be stated plainly and concisely. C. L. 1897, sec. 2685, sub-secs. 32, 49.

Chavez v. Torlina.

Where there is evidence to sustain the findings of the lower court sitting as a jury, they will not be disturbed on appeal.

STATEMENT OF FACTS.

In 1880, Santiago Baca surveyed and filed a plat of an addition to the town, now city of Albuquerque, and in 1881 a new survey was made of this addition, a new plat was also filed, and from an examination of these plats, it appears that the lots of same number do not cover the same ground; the lots in the survey of 1880 being twenty-five feet wide, and the lots in the survey of 1881 being twenty-five feet in width except Lot 3, Block 2, now owned by the plaintiff Chaves, which is twenty-two feet wide. On June 4, 1881, Santiago Baca and wife conveyed to Augustus Sweeney lot 3, block 2 of the Baca Addition, according to the survey of 1880. In September, 1882, Sweeney conveyed the same to Daniel Gary, and on November 20, 1884, Gary conveyed to Juan Chaves y Pena and wife a lot numbered the same, but according to the survey of 1881. It appears that the lots, not being marked on the ground under the survey of 1881, the grantee requested the grantor to stake out the lot, which was done, and the grantee took possession of the same as thus marked by stakes. In 1884 and 1885, Juan Chaves y Pena and wife erected an adobe building one hundred and thirty feet long by twenty-two and three or four inches wide on the lot which they understood they had purchased, erecting the north wall on the north line of the lot as staked out to them. This building is the one, for injury to the north wall of which, damages are sought to be recovered in this case. Juan Chaves y Pena and wife sold to Ignacio Baca y Chaves lot 3, block 2, December 13, 1885. Ignacio Baca y Chaves died about thirteen years ago, and on April 25, 1898, Eduardo Chaves, the plaintiff, purchased said lot from Maria de Baca, wife of Ignacio Baca y Chaves, and has continued to occupy the store building erected upon said lot by Juan Chaves y Pena, to the present time. On February 6, 1885, Baca and wife sold lots one and two of block 2, to John D. Torlina,

the defendant in this case, and the defendant took poss-
ession of them according to the survey of 1881. In 1889,
the defendant began the erection of what is now known as
the Eight-Spot Saloon upon lot 2, block 2, which adjoins
the lot occupied by plaintiff's store building, and for the
first time a question arose as to the boundary line between
the two lots. A surveyor was employed by the defend-
ant to determine the boundary, and the survey made
by him discloses the fact that the lot owned by the plain-
tiff was only twenty-two feet wide, whereas the lot of the
defendant was twenty-five feet wide, and disclosed the
further fact and reported the same to the defendant that
the north wall of the building occupied as a store by the
plaintiff and which had been erected long years before by
Juan Chaves y Pena, was upon the lot of the defendant to
the extent of two feet and one inch. It appears from the tes-
timony, that the defendant notified Ignacio Baca y Chaves,
who at that time owned the store building and the lot upon
which it was situated, to remove the north wall of his
building from the defendant's ground, and the result of
this notice was an agreement stated in the testimony
between the defendant and Ignacio Baca y Chaves, that
Baca's building should remain on the defendant's ground
until the defendant demanded it from him, and it is admit-
ted by the defendant that no demand was ever made, either
of Baca or the plaintiff for this ground, or for the removal
of this wall. Baca died some time later—the particular
time is not disclosed by the evidence—and his wife con-
tinued to use the store building, and in 1898, sold the
same to Eduardo Chaves the plaintiff. So far as the
evidence shows, Chaves knew nothing of the dispute as
to the boundary line between the defendant and Ignacio
Baca y Chaves, nor was he aware of the fact that the
north wall of the building was upon the ground of the
defendant. All that the evidence discloses upon this point
is, that when the wall had been damaged, so that it be-
came necessary to re-erect the same, the defendant ob-
serving the work of re-building this wall, some time in
1903, stated to the plaintiff Chaves, that this wall was

upon his ground, to which Chaves replied that it was not, and continued the erection of the wall. On July 31, 1903, the plaintiff Eduardo Chaves brought this suit, in which he claimed damages to the extent of $1250, alleging in the second paragraph of the complaint that the defendant between the first day of February, 1902, and the 22nd day of April, 1903, maliciously intending and contriving to injure and destroy the property of plaintiff, unlawfully and with force of arms entered upon said premises and cut, tore down, injured and destroyed the walls of said plaintiff's store-room or building, so that by reason thereof, a large portion of the walls of said store building were cracked, settled, injured, weakened and destroyed to plaintiff's damage in the sum of one thousand dollars. In the third paragraph of the complaint, it is alleged that between the same dates above stated the defendant by reason of rain waters which washed and ran down from the roofs and from below, of water closets, out-houses, houses and buildings belonging to the defendant, and which the defendant has built upon, against, touching and abutting against the north wall of plaintiff's said store building, so that by reason of the large quantities of rain waters so running against and upon said wall, from and off the roofs of said water closets, out-houses, and houses and buildings belonging to the defendant, a large portion of the walls of said store building were cracked, washed down, settled and destroyed, and so injured and weakened and destroyed, as to make it wholly unfit for the carrying on of plaintiff's business, to-wit, general merchandise, to the damage of plaintiff in the sum of one thousand dollars. In the fourth paragraph of the complaint, it is alleged that by reason of said store building having been so injured and destroyed, it became impossible for plaintiff to continue his business therein, and that he was compelled to move out of the said store building into another place of business, incurring damages to the extent of two hundred and fifty dollars.

Demurrer was sustained to this complaint, and it was amended at a later date, and at a still later date,

after the testimony had been taken, the complaint was again amended at the plaintiff's request, so as to conform to the evidence. Jury was waived, trial was had before the court, and judgment rendered in damages for the sum of four hundred and seventy five dollars. Appeal was prayed to this court, and granted.

### OPINION OF THE COURT.

McFIE, J.—There were two surveys made of the Baca Addition, one in 1880 and the other in 1881, and both were recorded. The lots are numbered the same, but the land is not. In the survey of 1880, the lots are twenty-five feet wide, but according to the second survey in 1881, the lots are twenty-five feet wide, except lot 3, block 2, which is only twenty-two feet wide. Santiago Baca, the owner of the addition, made his conveyances of lots 2 and 3, block 2, according to the survey and plat made in 1880, although he appears to have had both surveys made.

Baca and wife conveyed lot 3, block 2, to Augustus B. Sweeney in 1881, according to the survey of 1880. Sweeney conveyed to Daniel Geary in 1882, acording to the same survey, which survey made the lot twenty-five feet wide, but when Geary and wife conveyed to the wife of Juan Chaves y Pena in 1884, under purchase by her husband, they conveyed lot 3, block 2 according to the survey of 1881. The lot thus conveyed was not the same lot conveyed by the former deeds to Geary, and was only twenty-two feet wide. It appears, however, that under the survey of 1881, the boundaries of the lots were now marked on the ground, and when Chaves y Pena purchased, she had the surveyor stake out the lot. As she and her husband erected their building in 1884-5, to be used as a store and dwelling, leaving between two and three feet on the south side for an alley, and the building twenty-two feet and three or four inches wide, it is evident that the lot had been staked out to them twenty-five feet wide. Santiago Baca and wife conveyed lots 1 and 2, block 2, to the appellant Torlina in 1885, according to the survey of 1880, but as the court states in its

findings, the appellant took possession of lots 1 and 2 as shown by the survey of 1881. It will be observed that this overlapping occurred by reason of Geary's conveying under a different survey than that under which the lot was conveyed to him. When the defendant made this discovery, he had a written notice, dated June 10, 1889, served upon Ignacio Baca y Chaves, to whom Juan Chaves y Pena and wife had in the meantime conveyed the premises, notifying him that his building "trespasses" on defendant's lot 2, two and one-tenth feet; requesting him to remove "said trespass" from the ground without further notice, and that upon failure to do so he would be held liable for all damages and costs. After this notice was served, Ignacio Baca y Chaves and the appellant had a conference about the matter, the result of which was, that the defendant and Juan Chaves y Pena entered into an agreement, concerning the effect of which the appellant testified as follows:—

"Q. And under the agreement or contract you had with him (meaning Chaves y Pena) how long was he to occupy it?

A. Until I demanded it.

Q. Did you ever demand it during his life time?

A. No, sir, I did not.

From these facts it appears, that Ignacio Baca y Chavez, was to continue his possession of the portion of appellant's lot upon which his building stood, until demand for possession was made upon him, by the agreement and consent of the appellant, Baca, was therefore, a licensee, as suggested by the appellant's counsel. If a license, it was a personal privilege of Mr. Baca, which was not transferable, and which ceased to exist at his death. Baca died about the year, 1891, or 1892, as near as the witnesses were able to fix the time of his death.

In the case of DeHaro v. United States, 5th Wall. 627, the court said:—

"While a grant which passes some estate, must be in

writing and is irrevocable unless so provided, a license is a personal privilege, can be conferred by parole or writing, conveys no estate, is revocable by grantor, ceases with death of either party, cannot be alienated, and in no sense is property descendible to heirs." 1 Wash. Real Property 4th, 632; McLean v. Benton, 73 Cal. 340; Ruggles v. Leasure, 24 Prck. 187; Bleasdell v. R. R. Co., 51 N. H. 483.

Maria A. Chaves de Baca, the wife and sole heir at law of Ignacio, continued to occupy the premises, without objection from the appellant, from the death of her husband until the 15th day of April 1898, at which time she conveyed said lot 3, block 2, according to the survey of 1881, to the appellee Eduardo Chaves and one Ambrocio Gringas, and Gringas afterwards conveyed his interest therein to the appellee.

The appellee entered upon the possession after his purchase thereof and continued to occupy the same as a store and dwelling, with the full knowledge of the appellant, until this suit was brought and concluded. No demand was made upon him to vacate the premises or the overlapping portion of the building; nor did he have any knowledge that the building did overlap appellant's lot, nor notice of the controversy and agreement between appellant and Ignacio Baca y Chaves above referred to. So far as the appellee is concerned, the evidence fails to show that he had any knowledge of any confusion or dispute in regard to the boundaries of title of the lots involved. His purchase seems to have been made in good faith. Of course he was chargeable with notice of what the records disclosed as to the lot purchased.

The court permitted an amendment of the replication after trial, but before judgment, as appellee claimed, to conform to the evidence, and appellant assigns this ruling as error. Whatever the evidence may have been upon that issue at the trial below, the question of adverse possession will not be considered under this assignment. The court below found against the appellee as to the ownership of that overlapping strip, by adverse possession,

Chavez v. Torlina.

and there being no cross appeal questioning that finding for the purposes of this hearing it must stand. This finding in favor of the appellant, he cannot complain of, and therefore the ruling of the court as to the amendment is harmless, so far as the appellant is concerned; but there is a phase of this question which becomes quite serious under other assignments. The pleadings and the evidence show that the appellee held possession of the strip involved, as his own, and adversely to the appellant, and appellee sought to establish his ownership by such hostile possession, upon the trial below. By this contention, the appellee disclaims the holding of possession as a tenant or licensee as these are inconsistent with each other, and cannot be maintained at the same time. The appellee chose to stand upon this ground, and it devolved upon him to maintain it.

There is no evidence in the record that Maria A. Chaves y Baca knew anything about a conflict in the area of these lots, or about the agreement between her husband and appellant to the effect that he should remain upon appellant's land until demand was made upon him for it. She was sole heir to the lot, and became its absolute owner upon the death of her husband, and conveyed the same as such. The lot she occupied was only twenty-two feet wide, as shown by the last survey, but she occupied a space almost twenty-five feet wide. The wall of her store and dwelling was upon appellant's lot, but as she did not know this, and there is nothing to show that the appellant ever informed her of the fact, she undoubtedly claimed to own the building and the ground on which it stood. The appellee in his pleadings, claims the benefit of the peaceable possession of his predecessors in title, as he had a right to do in order that he may make out his title by adverse possession for ten years or more. There being no testimony to show that Mrs. Chaves held by any tenancy or license, it is difficult to conclude otherwise than that she held adversely to appellant, as her possession was peaceable and continuous for at least six years, when she sold and conveyed the premises, including the building, to the appellee

in 1898. To maintain a building upon another's land, is as substantial evidence of an adverse holding as could well be imagined, and this was done by Mrs. Chaves without any recognition of any right of the appellant to any part of the land on which her building stood. This tends strongly to establish an adverse and entirely peaceable possession in Mrs. Chaves for at least six years immediately preceding its conveyance to the appellee Eduardo Chaves and Ambrocio Gringas. Eduardo Chaves and Ambrocio Gringas continued in the peaceable possession and occupancy of the building and premises until 1901, when Gringas sold his interest therein to the appellee Chaves, and the appellee continued the same until the commencement of this suit, July 31, 1903. It is true, that in 1903, after the alleged damage had been done to the wall of appellee's building, and he was preparing to rebuild the wall, the following colloquy occurred, as testified to by appellant:—

"And I told Mr. Chaves, why, your wall is on my ground. He says, it is no such thing—he says I will fix you; and says I, you cannot throw your rubbish in this yard—you throw your rubbish on your own side."

This conversation is of too casual a nature to be regarded as sufficient to suspend the operation of the law of adverse possession, but however that may have been, as this occurred about April or May of 1905, if we are correct in continuing the possession of Mrs. Chaves and that of Gringas and Chaves, more than eleven years elapsed before this conversation. Even if it were true that adverse possession had ripened in the appellee, it is not for this court to decide that issue, further than to point out what the evidence tends to show, as bearing upon the right of damages based upon the finding of the court below, that the appellant was liable because the appellee "had not been notified or requested to remove his building from the portion of said lot 2 which it covered, and was entitled to have it remain there until such notice." If the appellee is relying upon an ownership and possession hostile to the

true owner, we see no ground of liability of the true owner, except for acts or omissions which are of malicious origin, and the court below found that appellant's acts or negligence complained of, were not malicious. If appellant was a stranger to the title, of course, it would be different, and the court's finding would be a correct statemen of the law of the case.

"The relation of landlord and tenant does not arise where the occupant of the land holds adversely to the owner, and the occupant in such case is not liable for rent. An entry on lands of another without right and not in subordination to the title of the owner is a mere trespass, and no tenancy is created thereby." Jones on Landlord and Tenant, Sec. 2 and cases cited.

If then the relation of landlord and tenant did not exist between Chaves and Torlina, it was not necessary for Torlina to give Chaves notice to quit and remove the wall from the strip of land owned by Torlina. Jones on Landlord and Tenant, sec. 257, and cases cited.

Nor was notice necessary if Chaves were held to be a licensee, but as has been said, he could not be a licensee and hold adversely at the same time. Now, was there an adverse holding? We find absolutely no evidence in the record that Chaves at any time recognized the title of Torlina to the strip of land on which the north wall of his store and dwelling house stands. He testified that he owned the property on which he was doing business, and this business house covered the strip in dispute. There is no evidence that Chaves ever paid or agreed to pay the owner any rent, nor that Chaves ever knew that there was any question of his ownership until after the wall fell. From these facts it appears clear that he was not occupying in subserviency to the title of any other owner, but that he occupied the same as the owner of the title. After the wall had fallen, and he was engaged in rebuilding the same, the evidence shows that Torlina told Chaves that the wall was upon his, Torlina's, ground, and Chaves replied that it was not on Torlina's ground; a statement utterly inconsistent with an occupancy in subordination to the title of the true owner. This was the status of the case when the

Chavez v. Torlina.

ccurt handed down findings of fact and conclusions of law. After the views of the court were known, counsel, on the 24th day of May, 1906, asked and obtained leave of the court to amend his complaint so as to show that he claimed title, except as to the strip of land upon which the north wall of his store stood. Counsel for the defendant duly excepted to the allowance of this amendment. The amendment being made after all of the testimony was taken, could not change the attitude of the plaintiff, (as disclosed by his testimony) as claiming adversely, the ground upon which his store was situated necessarily including the ground in dispute. Nor does the court's conclusion that plaintiff had not established title by adverse possession of the strip in dispute, change his attitude, as he might claim adversely notwithstanding his failure to establish his claim. In our opinion, the plaintiff's attitude was that of an adverse claimant, and not that of an occupant holding in subordination to the title of the true owner.

The court below, taking the view evidently, that by reason of the agreement for notice between Torlina and Ignacio Baca y Chaves, the appellee Eduardo Chaves was a licensee or tenant at will, and if so he was entitled to notice to quit; but for the reasons above stated, we are unable to agree to this with this finding, the license having expired with the death of the licensee, and no circumstances proved by which a tenancy of any kind could be established. The evidence shows that the appellee claimed the ownership of, and was occupying twenty-five feet of ground, whereas, the lot he purchased was only twenty-two feet wide as disclosed by the plat on record in the recorder's office of the county of Bernalillo, from which it appears that he did not have even color of title for the land in dispute, and the last amendment of his complaint admitted this. If therefore, appellee was holding adversely; as we have concluded he was, and his adverse holding had not ripened into title under the statute, he was not a licensee or tenant at will, or at sufferance, but a trespasser, without right of notice to quit by the real owner. If the appellee was a trespasser or even a licensee, the rule of law is

that "the owner is not liable to a trespasser, or one who is on his property by mere permission or sufferance, for negligence of himself or agents." Gillis v. Pennsylvania R. R. Co., 59 Penn. State 129.

"If the city was under no obligation to the deceased to make the extension safer or to keep it in any particular condition, then the deceased is to be regarded as a trespasser, or at the most a bare licensee, and the only obligation resting upon the city would be to refrain from any wanton or willful act producing injury." Albert v. New York, 75 App. Div. (N. Y.) 556; Pittsburg Ry. Co. v. Bingham, 29 Ohio St. 364.

A bare licensee goes upon premises at his own risk, must take them as he finds them, and accepts the permission thus granted with its concomitant conditions and perils. Redigan v. Railroad Co., 155 Mass. 44; Fairplay Hydraulic Mining Co. v. Weston, 67 Pac. 160.

The court below found that the injuries complained of in this case, were not committed wantonly or maliciously, and under such circumstances, the true owner, Torlina, is not liable for damages in any sum whatever. Being a trespasser, by holding adversely the true owner did not owe him any duty except to avoid wanton and malicious injury; and this, the court below found he did.

The court below awarded the appellee damages in the sum of four hundred and seventy-five dollars, and gave judgment for that amount against the appellant. We are of the opinion that this was error, for which the judgment must be reversed.

It appears that the appellant notified the appellee that his, appellee's wall, was upon his ground, at the time he was preparing to rebuild the fallen wall. In view of this fact, and the further fact that appellee was a trespasser upon appellant's ground, no damages could be recovered for the rebuilding of this wall.

"But if it be holden that a license to erect a dam implies also a license to repair the same at pleasure, it would seem, from the authorities, that the license cannot be sustained. It is said that such a license would give

a permanent interest in the land on which the license was to be exercised, and that such an interest cannot be created by parol." Carleton v. Redington, 21 N. II. 291, (307); Price v. Case, 10 Conn. 375.

Indeed, the law seems to be, in such cases that the party suffering from the encroachment, has no right to recover in damages. As the damages sought to be recovered, were, in large part, for the re-building of this encroaching wall, it would seem to be an additional reason for denying the right of recovery in this case.

We are further of the opinion that the cause of the injury complained of as disclosed by the evidence and found by the court, is not alleged in the amended complaint, inasmuch as the first two paragraphs fail to allege the cause of the injury claimed, and the third paragraph alleges the destruction of the wall to have been caused by the descent of rain water from the roof of appellant's building and outbuildings, which did not occur, as found by the court, until after the commencement of this suit.

In reversing this case, it seems proper to say, that there is reason to believe from the whole record, that the actions of the parties are to some extent due to confusion and honest mistake. And in view of that fact, the cause will be reversed and remanded with leave to reform the pleadings without prejudice as to the issue of adverse possession, excluded by the amended complaint.

W. H. Pope, A. J., concurs in the result.