RHODE v. DUFF et al.

(Circuit Court of Appeals, Eighth Circuit. August 18, 1913.)

No. 3,893.

**1. NEGLIGENCE (§ 32*)—CONDITION OF BUILDING—CARE REQUIRED AS TO LICENSEES.**

Plaintiff, while out riding in the evening with an acquaintance who owned an automobile, accompanied him into defendants' garage to make some repairs. Plaintiff was not a customer of defendant nor employed by the owner of the machine, but voluntarily assisted in the work. At his request an employé of defendant directed him to a toilet room in the corner of a rear work room, and by mistake he entered the door of a cellarway which was near but not in the corner of the room, and fell and was injured. An electric light was burning a few feet in front of the door. *Held*, that plaintiff was a mere licensee, who sought the toilet room without invitation, and who accepted and used the license subject to all its concomitant risks and perils, and that defendant was not chargeable with any negligence which rendered him liable for the injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 42–44; Dec. Dig. § 32.*]

**2. DISMISSAL AND NONSUIT (§ 6*) — VOLUNTARY DISMISSAL — MOTION AFTER CLOSE OF EVIDENCE.**

Under the Nebraska practice, a motion by plaintiff to dismiss, made after he has rested his case and a motion for a directed verdict has been argued, comes too late.

[Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 13, 14; Dec. Dig. § 6.*]

In Error to the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Action at law by John G. Rhode against Ralph A. Duff and the R. A. Duff Company. Judgment for defendants, and plaintiff brings error. Affirmed.

I. N. Flickinger, of Council Bluffs, Iowa (R. A. Flickinger, of Council Bluffs, Iowa, Burkett, Wilson & Brown, of Lincoln, Neb., and Flickinger Bros., of Council Bluffs, Iowa, on the brief), for plaintiff in error.

Paul Jessen, of Nebraska City, Neb., and B. F. Good, of Lincoln, Neb. (A. M. Bunting, of Lincoln, Neb., on the brief), for defendants in error.

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. The court below directed a verdict for Duff, who was the defendant below, on the ground that when the plaintiff fell into the cellar in the defendant's garage he was there as a mere licensee. The claim of the plaintiff was that he was there as a customer, or by implied invitation.

[1] The evidence showed the following facts: Paul, a young man of about plaintiff's age, having nothing to do at home and finding it dull, about 7 o'clock p. m. on January 11, 1911, made up a pleasure

party and decided to go to Nebraska City in his automobile, to get some wire for the magneto. He invited three young men to go with him, among whom was the plaintiff. On the bridge crossing from Iowa into Nebraska they discovered a flat tire.

"It was pretty cold out there, and we didn't have any inner tubes, and we ran into the garage to fix that tire, and while we were there Jack decided that he would go to work on the magneto. It was warm in there, and he would fix it in there in place of the cold shed at home. He started on it, anyhow; he started, and his brother Joe and I started to fix the punctured tire.

"Q. Did Jack, the plaintiff, get the wire from the garage there for the purpose of fixing the magneto? A. I got the wire."

The garage which they entered and which belonged to the defendant faced to the south, fronting upon Main street. It extended about 120 feet to an alley on the north, and was about 40 feet wide from east to west. Across the building, and from 80 to 100 feet back from the entrance, was a partition from 10 to 12 feet high which divided the place into two rooms. The front room was the office and sales and show room. The back room was a machine or repair shop.

About 20 minutes after the plaintiff commenced to work on the magneto, he asked Armstrong, an employé of the defendant, where the toilet room was. Armstrong told him to go to the rear end of the building in the northwest corner. Plaintiff went into the repair room, and instead of going to the northwest corner, stepped through an open door that led to the cellar, about two or three feet south of the water-closet, fell, and received the injuries complained of. He thought that this door was the door to the closet. The closet was, in fact, in the northwest corner of the repair shop, and there was an electric light burning about 10 or 12 feet east of the opening into which he fell.

Paul was a frequent visitor to the garage, had bought articles there before, and did so on this occasion. He was undoubtedly a customer. The amended petition alleged that the plaintiff also was a patron. There was an attempt on his part to prove that Paul had employed him to repair the magneto at the garage, and had taken him there for that purpose. But this attempt entirely failed. Plaintiff testified that he was not employed at that time by Paul, and Paul said that he did not take him there for any particular purpose. It clearly appears that the idea of repairing the magneto at the garage was suggested by some one of the party after they arrived there, and that they had no such intention before they entered.

There was evidence to show that the plaintiff while working for a firm had at one time before this occasion repaired the radiator on Paul's machine, and at other times had mended the tires and the pump. But this evidence did not tend to show that he was the servant of Paul while he was at the garage.

Plaintiff therefore was in no sense a customer of the defendant. He was at the garage solely for his own convenience or pleasure. We consider that he stands in no better position than would a passer-by who desiring to use a water-closet, entered the garage, asked where it was, and had been directed to it, as was the plaintiff. While there was evidence that persons coming into the front part of the garage had

used the water-closet with the consent of the defendant, yet it was in no sense a part of the premises to which the public was invited.

The law applicable to these facts, as declared by this court in Foster v. Portland Gold Mining Co., 114 Fed. 613, 52 C. C. A. 393, is as follows:

"So, too, if she were a bare licensee or volunteer (that is to say, if she went upon defendant's land by its mere sufferance or toleration, without its invitation or inducement, but solely for her own convenience or pleasure), she would be held to accept and enjoy the license, subject to all its concomitant risks and perils. Sweeny v. Railroad Co., 10 Allen (Mass.) 368, 87 Am. Dec. 644; Reardon v. Thompson, 149 Mass. 267, 21 N. E. 369; Redigan v. Railroad Co., 155 Mass. 44, 28 N. E. 1133, 14 L. R. A. 276, 31 Am. St. Rep. 520; Benson v. Traction Co., 77 Md. 535, 26 Atl. 973, 20 L. R. A. 714, 39 Am. St. Rep. 436."

To the same effect are Shults v. C., B. & Q. Ry. Co., 91 Neb. 587, 136 N. W. 834; Galveston Oil Co. v. Morton, 70 Tex. 400, 7 S. W. 756, 8 Am. St. Rep. 611; Means v. Southern California Ry. Co., 144 Cal. 473, 77 Pac. 1001, 1 Ann. Cas. 206; Faris v. Hoberg, 134 Ind. 269, 33 N. E. 1028, 39 Am. St. Rep. 261.

We have referred particularly to the evidence showing that the plaintiff was not a customer, nor in the garage by the implied invitation of the defendant, because the cases upon which the plaintiff relies are all of that character. In Glaser v. Rothschild, 221 Mo. 180, at page 185, 120 S. W. 1, at page 3 (22 L. R. A. [N. S.] 1045, 17 Ann. Cas. 576), the plaintiff was on the premises by the express invitation of the defendant. Moreover, the court there said:

"A bare licensee (barring wantonness or some form of intentional wrong or active negligence by the owner or occupant) takes the premises as he finds them."

In Sheyer v. Lowell, 134 Cal. 357, 66 Pac. 307, the plaintiff was sent by his employer to the warehouse of the defendant, to secure a sample of nuts stored there. Moreover, the court said that the negligence of the defendant's porter, who accompanied the plaintiff and did not warn him of the dangerous place, was sufficient to sustain the action. In Engel v. Smith, 82 Mich. 1, 46 N. W. 21, 21 Am. St. Rep. 549, it appeared that the plaintiff, a tinsmith, was occupying a room upon the second floor of the building leased by the defendants. He was therefore their tenant. In Burner v. Higman & Skinner Co., 127 Iowa, 580, 103 N. W. 802, it appeared that the plaintiff, an employé of a dray line, was requested by the owner of goods stored for hire by the Higman & Skinner Company to go to their building and remove the goods. In Burk v. Walsh, 118 Iowa, 397, 92 N. W. 65, the petition alleged that the plaintiff was a customer of the defendant, and the court so considered him. The plaintiff was also a customer in Gardner v. Waterloo Cream Separator Co., 134 Iowa, 6, 111 N. W. 316. The decision in Bennett v. Railroad Co., 102 U. S. 577, 26 L. Ed. 235, was upon the ground that the plaintiff was upon the defendant's premises at its implied invitation.

The court below directed a verdict for the defendant upon the ground that:

"Mr. Rhode at the time he was in this place of business was there merely by permission as a licensee, and that the defendant owed no duty to him to change his arrangements in his place of business with regard to this doorway and the location of the water-closet and the lights maintained there. If it was satisfactory to the defendant, it served his purpose, and then the plaintiff was bound to take the place as he found it."

We think that this was a correct statement of the law under the evidence produced, and that there was no error in directing a verdict for the defendant.

The plaintiff on the argument in this court claimed that the defendant maintained on his premises a dangerous pitfall. The facts, as they appeared from the evidence as above stated, show that there is nothing in this claim.

[2] The court did not err in refusing to allow the plaintiff to dismiss the case. This motion came after the plaintiff had rested, with the right only to introduce later the testimony of a doctor upon the question of damages, after the defendant had moved for a directed verdict, and after that motion had been argued. Under the decision of the Supreme Court of Nebraska in the case of Bee Building Co. v. Dalton, 68 Neb. 38, 93 N. W. 930, 4 Ann. Cas. 508, the request of the plaintiff came too late.

The judgment of the court below is affirmed.