**PEEBLES et al. v. EXCHANGE BLDG. CO.**

(Circuit Court of Appeals, Sixth Circuit. November 8, 1926.)

No. 4482.

**1. Negligence ⊙⟹32(1).**

In absence of invitation to woman to be on stairway in office building where injured, owner owed her no duty of properly lighting stairway, notwithstanding invitation to be in building.

**2. Negligence ⊙⟹33(1).**

Licensee or trespasser cannot recover for injuries because of failure of owner of office building to properly light stairway on which injury occurred.

**3. Landlord and tenant ⊙⟹167(2).**

Implied invitation to customer of tenant in office building is restricted, in sense that conduct after entry must be naturally incident to business carried on by tenant.

**4. Landlord and tenant ⊙⟹167(2).**

Customers, patients, and clients of tenants in office building are impliedly invited to visit offices on matters of business, and may use either stairway or elevator.

**5. Landlord and tenant ⊙⟹167(2).**

Implied invitation to customers to visit tenants in office building on matters of business includes in case of necessity use of toilets intended for tenants' use.

**6. Landlord and tenant ⊙⟹167(3)—Owner of office building held not liable for injuries to invitee, falling on unlighted stairway during search for toilet.**

Owner of office building *held* not liable for injury to invitee, falling on unlighted stairway during search for toilet, in view of her knowledge that use of toilets was limited to introduction thereto by tenant.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Separate suits by Mrs. J. W. Peebles and J. W. Peebles against the Exchange Building Company, consolidated and tried together. Judgment for defendant, and plaintiffs bring error. Affirmed.

Jere Horne, of Memphis, Tenn. (Walsh & Bell, of Memphis, Tenn., on the brief), for plaintiffs in error.

Walter P. Armstrong, of Memphis, Tenn. (Wilson, Gates & Armstrong and Chandler, Bates, Shepard & Owen, all of Memphis, Tenn., on the brief), for defendant in error.

Before DENISON and MOORMAN, Circuit Judges, and COCHRAN, District Judge.

ANDREW M. J. COCHRAN, District Judge. The writ of error before us complains of the judgment of the lower court, dismissing the declarations of the plaintiffs on a directed verdict for the defendant. The defendant is the owner and operator of an office building in the city of Memphis, 20 stories high, 19 of which are rented. It faces east, and extends from north to south, or vice versa. On each floor there is a corridor so extending. The offices are between it and the front. The elevators, seven in number, are on the west side. A stairway, as is usual in such buildings, winds around the elevator from floor to floor. We are concerned only with the stairway from the tenth to the ninth floor, and it is only necessary to describe it. It is entered from the corridor on the tenth floor, adjoining and south of the elevators. It descends therefrom westwardly two steps to a landing, from thence northwardly two steps to another landing, and from thence eastwardly to the ninth floor. An electric light fixture is stationed above the first landing and a banister runs along the side of each flight of steps. There is a toilet on each floor. Those on the twelfth and sixth floors only are intended for the use of women. The door of each toilet has a night latch, and it is intended that it should always be kept locked. Signs are posted on the outside and inside of each door. That on the outside reads, "Toilets for Tenants Only." That on the inside, "Don't Forget Your Key." The elevators run regularly; i. e., on scheduled time, possibly every five minutes. The signals given from each floor are intended only to indicate the floors at which stops shall be made. When one completes its ascension, it at once descends. On Sundays only three elevators are operated. There is a grill door from the corridor to the stairway on the third floor. This door is kept locked on Sundays. The electric light fixtures over the landings in the stairways are not lit on those days.

A practicing physician, Dr. Robert G. Henderson, had an office on the tenth floor. The plaintiffs, wife and husband, lived across the Mississippi river in Arkansas, and the husband was a patient of the doctor. On Sunday, October 7, 1923, between 10 and 11 o'clock in the morning, he, accompanied by his wife, visited the doctor, who was expected to prescribe a new treatment. She went along in order that the doctor might tell her how to use it. Whilst they were waiting his turn, she had occasion to use the toilet. On a previous visit she had used the toilet on that floor. She was permitted to do so by the female attendant of the doctor. It would seem that on that occasion the door was locked, and the attendant furnished the key or unlocked the door for her. Previously she had visited a doctor—Dr. Livermore—whose office was on the thirteenth floor. On this visit she also had occasion to use the toilet. She was directed to the toilet on the lower floor, the twelfth, where was one of the two toilets set apart for the use of women. She found it unlocked.

On the last visit, the one in question here, the female attendant of Dr. Henderson was not present. Upon becoming aware of the call of nature, she went to the toilet on that floor and found it locked. She returned to the doctor's office to see if she could find Dr. Henderson or another doctor, possibly an assistant, in the reception room, likely for the purpose of obtaining the key. They were not there. She then looked for the key, and, not finding it, determined to see if there was not a toilet on the lower (the ninth) floor, which she could use. In so doing she failed to avail herself of the opportunity of entering the office where the doctors were at work and obtaining the key from them. Her reason for not doing so was that they were busy. She reasoned that, because on the occasion of her previous visit to Dr. Livermore on the thirteenth floor she had found an open toilet on the lower (twelfth) floor, she would find one on the lower floor, ninth floor—a non sequitur. She went to the elevators and gave the signal. She waited as she testified "say five minutes" for a response. Possibly the time seemed longer than it really was. The elevator not responding, she walked briskly to the stairway and started to descend to the lower floor. She descended the first flight and passed the first landing. In descending the second flight she fell and broke her hip. According to the husband's testimony, the stairway was dark, and, when he went to her rescue, she having in the meantime crawled back upon the first landing and leaned back against the first step, he could hardly see the outline of her form from the top step and could not see the steps themselves at all. According to the testimony of a young man, who also went to her rescue, the stairway was dark, but not pitch dark.

It was dim, very dim. According to her testimony it was so dark she could not see where to put her feet. In descending she 'held onto the banister and felt with her hands and feet how to go. She could not tell how she came to fall, except that her foot slipped or she lost her footing, on account of the darkness. There was no obstruction on the stairway to cause her to fall.

The wife and the husband each brought a separate suit to recover the damages sustained by reason of such injury. The two actions were consolidated and tried together. The ground upon which recovery was sought was that the defendant owed the female plaintiff the duty of having the electric light fixture, above the first landing on the stairway she was attempting to descend when she fell, lit, and that it was negligent in not having it lit, which negligence was the cause of her fall and injury.

[1, 2] The question before us for decision is whether, on the facts stated, defendant did owe such duty. Possibly it is open to claim that the female plaintiff was guilty of contributory negligence as a matter of law, and that the peremptory instruction can be upheld on this ground. But we do not find it necessary to pass on this question, as we are clear that defendant did not owe such duty to that plaintiff. In order for it to have owed it such duty, it is essential that it can be said that her attempt to descend the stairway was by the implied invitation of defendant. The declarations allege that she was on the defendant's premises by invitation. But this is not sufficient. She must have been where she was when she fell by such invitation. If in being there she was a licensee or trespasser, no recovery can be had. Licensees must take the premises as they find them. The owner thereof is not bound to care for their safety, otherwise than to refrain from setting a trap for them and other active negligence.

What is essential to make out a case of implied invitation has been stated in several recent cases. In the case of Greenfield v. Miller, 173 Wis. 184, 188, 180 N. W. 834, 836, 12 A. L. R. 982, 985, the matter is thus put: "It will be seen that in the cases of inviter and invitee there must be some benefit to the inviter in order to render him liable for failure to exercise ordinary care. There must be some mutuality of interest; and if the interest be only such as concerns the person entering, then he is but a mere licensee, and there is no implied invitation."

In the case of Robinson v. Leighton, 122 Me. 309, 312, 119 A. 809, 810, 30 A. L. R. 1386, 1389, it is stated thus: "An invitation is implied when the owner by acts or conduct leads another to the belief that the use is in accordance with the design for which the place was adapted and allowed to be used in mutuality of interest."

The Supreme Court of Maine, in a case involving an office building, to wit, Stanwood v. Clancey, 106 Me. 72, 75 A. 293, had theretofore stated the rule in these words: "It is well settled that, when the owner of a building fits it up for business uses, he impliedly invites all persons to come there whose coming is naturally incident to the business carried on there; and if he leases the building, or parts of it, to tenants, he impliedly invites all persons to come there in connection with the business carried on by the tenants. At the same time, if the building is open, and there is nothing to indicate that strangers are not wanted, he impliedly permits and licenses persons to come there for their own convenience, or to gratify their curiosity. To those invited he owes the duty of exercising a care with reference to the management of an elevator operated by him, but to those merely licensed he owes no such duty."

In the case of Konick v. Champneys, 108 Wash. 35, 39, 183 P. 75, 77, 6 A. L. R. 459, 462, which also involved an office building, there occurs this statement: "It is a wellsettled rule that, when the owner of a building fits it up for business or office uses and leases rooms therein to tenants, retaining control over the entrance ways to such rooms, he impliedly invites all persons to enter the building whose entry is naturally incident to the business carried on by the tenant."

The court quoted this statement from its opinion in a previous case: "The rule of implied invitation may be stated as follows: Invitation, as distinguished from mere license, is implied by law only when the visitor comes for some purpose connected with the business in which the owner or occupant is there engaged, or which he permits there to be carried on, and there must be some real or supposed mutuality of interest."

It made this further statement in regard to the matter: "The rule presupposes, of course, that the invitee enters at a reasonable hour, conducts himself in an orderly manner, and, as said in the case cited from this court, enters on some business in which the tenant has an interest. In the case where the tenant is a lawyer, doctor, architect, or other professional man, the rule would include a person who enters to consult him on professional business, and in the case of a manufacturer of or dealer in commodities

would include a person entering for the purpose of dealing with relation to such commodities. It would not, however, include a peddler or solicitor, or a person seeking a purchaser for something he had to sell. Such persons, even if they are expressly permitted to enter on the premises, are mere licensees."

[3] This latter statement expresses the idea that an implied invitation is not an unlimited one. The invitee has no right to enter when he pleases, or do as he pleases after entering. He must enter at a reasonable hour, and after entry he must conduct himself in an orderly manner. As the invitation to enter is restricted to those "whose entry is naturally incident to the business carried on by the tenant," it would seem that the invitation as to how they shall conduct themselves after they enter is restricted by the same consideration. They may do no more than what is naturally incident to such business. Still further, the owner may expressly limit the invitation in this particular. And a limitation may be implied from the way things are carried on in the building.

In Robinson v. Leighton, supra, the case was this. A patient visited a doctor, who had his offices on the second floor of a four-story building. The doctor desired to indicate to him the whereabouts of another doctor's office. So the two, the doctor preceding, left the latter's office, walked down an adjoining hallway or corridor, a distance of five or six feet, to a door in the rear wall of the building. The door had a spring latch on the inside. The doctor opened the door, and thence stepped down six inches onto a fire escape constructed and maintained by the owner of the building, intending to point out the location of the other doctor's office. The fire escape was in a defective condition, and by reason thereof the doctor was precipitated to the ground. In a suit by him against the owner of the building to recover damages for the injuries he had sustained, it was held that he could not recover, and this notwithstanding there had been previous use of the fire escape as a sort of balcony or veranda by himself and one other tenant. The ground of the decision was that, though there was an implied invitation to the tenants to use the fire escape as an emergency exit, the invitation was limited to such use. In using it otherwise, the tenants were mere licensees.

[4, 5] It remains to apply here these general principles thus set forth and stated to the facts of this case. In accordance therewith it must be held that the customers, patients, and clients of the tenants occupying the defendant's building were impliedly invited to visit the offices of such tenants as to matters connected with such business. It may be taken, also, that they were impliedly invited to use the stairway in making such visitation. The implied invitation was not limited to the elevators. As, for instance, a customer, patient, or client of a tenant on one floor having transacted his business with such tenant, and being a customer, patient, or client of a tenant on the lower or upper floor, it would be within the invitation for him to use the stairway rather than wait for the elevator. Indeed, it would seem to be within it for a customer, patient, or client of a tenant on the top floor to use the stairway altogether in reaching such tenant or on his way out of the building. It may be said, however, that this invitation was limited to week days, the closing of the grill door on the third floor and the not lighting the stairways on Sundays being a sufficient indication of such limitation. It may be taken, further, that the invitation was not limited to visiting the offices of the tenants, but that it included the use of the toilets in case of necessity, and this notwithstanding the notice on the door of each toilet that they were for tenants only.

The meaning of such notice could well be that the toilets were intended for the use of the tenants themselves, their employees, and their customers, patients, and clients. It was to the interest of the tenants that there be toilets to which they could introduce such persons, and what was their interest was the interest of the defendant. The tenants were supplied with keys by which they could introduce their customers, patients, and clients thereto. The wording of the notice that they were limited to tenants only can be accounted for by the consideration that it was contemplated that such persons could gain access to the toilets only through the tenants, who were supplied with the keys by means of which access thereto could be gained. Whilst provision was made of toilets for women exclusively only on the twelfth and sixth floors, such provision did not negative that it was contemplated that women might be introduced by the tenants to the other toilets.

[6] Thus far we have been considering the implied invitation, so far as it related to customers, patients, and clients of the tenants. The female plaintiff was not a patient of Dr. Henderson, and the case presents the question whether there was an implied invitation to her, and, if so, whether the invitation was the same as that to her husband. We have stated that the test of an

implied invitation to enter to be whether the entry is naturally incident to the business carried on by the tenant. The visit of the female plaintiff was for the purpose of obtaining first-hand knowledge of the treatment to be prescribed to her husband, in order that she might be better able to assist him in administering the treatment. This would seem to be sufficient to justify the position that her visit was naturally incident to the business of the doctor. The necessities of this case, however, do not require that we actually pass on this question. So we need do no more than assume that this position is sound. This is so, because it is clear that the female plaintiff's search for a toilet was not within any implied invitation to her. It would not have been within such invitation, had she been a patient. There was no implied invitation to customers, patients, or clients of the tenants to wander through the building searching for open toilets, not even on week days. The invitation to use toilets was limited to their use when introduced thereto by the tenants. And it must be taken that the female plaintiff knew this. On the two previous occasions she had been introduced to the toilet by the tenant. The time when she used the toilet set apart for women on the twelfth floor, she was directed thereto by Dr. Livermore, whose patient she was.

Besides, there was no reason why she should not have observed the notice on the outside of the toilet door limiting the use to tenants. She could have entered the office where Dr. Henderson was at work and obtained the key for the toilet on his floor, but she chose to do otherwise. Had she exercised more patience, she could have gone down on the elevator. It is not unlikely that her descent of the stairway was more or less hurried. No doubt her judgment was affected, somewhat by the stress of her condition, and because of this one should be tender in judging her actions. This consideration may be sufficient to relieve her of the charge of contributory negligence. But it is not open to claim that the defendant was to any extent to blame for her injuries. It had made reasonable provision for any ordinary demand for the use of a toilet, and it had no reason to anticipate that a case of this sort would arise and make provision against harm happening.

The defendant in error has cited the following toilet cases, where it was held that no recovery could be had, which are more or less in point here, to wit: Schmidt v. Bauer, 80 Cal. 565, 22 P. 256, 5 L. R. A. 580; Herzog v. Hemphill, 7 Cal. App. 116, 93 P. 899; Kneiser v. Belasco-Blackwood Co., 22 Cal. App. 205, 133 P. 989; Carey v. Gray, 98 N. J. Law, 217, 119 A. 176; Vaughan v. Transit Dev. Co., 222 N. Y. 79, 118 N. E. 219; Rhode v. Duff, 208 F. 115, 125 C. C. A. 343. The case of Pauckner v. Wakem, 231 Ill. 276, 83 N. E. 202, 14 L. R. A. (N. S.) 1118, also a toilet case, cited by plaintiff in error, does not militate against any position which we have taken.

The judgment of the lower court is affirmed.