COLLECTION SPECIALISTS, INC., A DIVISION OF GENERAL SERVICE BUREAU, INC., APPELLANT, v. GEORGIA L. VESELY, APPELLEE.

469 N.W.2d 549

Filed May 24, 1991.    No. 89-143.

William V. Brown for appellant.

Lowell R. Johnson and Dennis E. Martin, of Martin & Martin, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

GRANT, J.

Plaintiff, Collection Specialists, Inc., appeals from an order of the Sarpy County District Court reversing and remanding a decision of the county court for Sarpy County. The cause was remanded to the county court with directions to deny plaintiff's motion to dismiss without prejudice, made at the conclusion of all the evidence in the case, and to grant defendant's motion for a directed verdict. Plaintiff timely appealed to this court, assigning as error the actions of the district court in determining that the case had been finally submitted to the county court and in finding that the county court abused its discretion in allowing the plaintiff to dismiss its petition without prejudice. We affirm the judgment of the district court.

The record shows the following: Plaintiff, as assignee of a claim by Lutheran Medical Center against the defendant, Georgia L. Vesely, commenced this action in the county court for Sarpy County. Plaintiff's petition, as filed, alleged that "[t]he defendant is indebted to the following creditors who have assigned their claim against the defendant to the plaintiff and who have provided necessaries of life: Lutheran Medical Center $3393.40."

At trial in county court, only one witness testified. That witness identified two exhibits. Exhibit 1 was a detailed bill of

hospital charges totaling $13,972.65 incurred by a James M. Horst. This bill identified Horst as the patient and defendant as the "Guarantor." There was no evidence submitted as to a guaranty. The business manager of Lutheran testified that the medical center had received payments of $10,579.25 from Crown Life Insurance Company. No evidence was submitted as to any connection between the defendant and Horst, the defendant and Crown Life, or Horst and Crown Life. Plaintiff then rested.

Defendant then moved to strike certain parts of the bill, and stated to the court, "You're going to need a guarantee. It's a statute of frauds, that if you're going to guarantee the debt of another . . . ." Counsel for plaintiff then stated to the court, "As to the objection to the guarantor, I believe the hospital uses that phrase a little differently than a cosignor on a note which would fall under statutes of frauds. Guarantor, I believe, will mean the person [who] the insurance is billed to."

Defendant then proceeded to cross-examination and directed two questions to the business manager, who testified that the patient's name was James Horst and that the services were provided for Horst. The court then asked counsel for plaintiff if there was "anything else." Counsel replied, "Nothing further, Your Honor." Defendant's counsel then stated, "Defendant rests." The court then asked, "Any rebuttal evidence Mr. Brown [plaintiff's counsel]?" Counsel replied, "No, Your Honor."

Counsel for defendant then stated, "After he [plaintiff] rested I meant to make a motion for a directed verdict . . . ." Counsel for both parties then argued to the court.

Defendant's motion was based on plaintiff's failure to establish any relationship between defendant and Horst and on plaintiff's failure to produce any writing signed by defendant guaranteeing the debt. Counsel for plaintiff responded as follows:

> Well, Your Honor, the fact is that Miss Vesely — You say that we didn't have anybody testify to the fact that she had — That we have had testimony to the fact that she had the account billed to her insurance, that $10,000 were [sic] paid from her insurance company for that patient. And

that the account was billed to her and her responsibility. Other than that I have nothing further.

This response was purely argument. There was no testimony concerning defendant's insurance, nor was there any testimony concerning defendant's "responsibility." Without ruling on defendant's motion for a directed verdict, the county court suggested to plaintiff that its petition was deficient. The following proceedings ensued:

THE COURT: Okay. Your petition doesn't allege that you're suing on a guarantee either. Does it?

MR. BROWN: No, Your Honor. But this isn't - - -

THE COURT: I'll give you leave to amend it, if you wish, to say that that's what you are doing.

MR. BROWN: Okay. If I may.

THE COURT: But you're not — You don't allege that in your petition. If you're suing on a guarantee, so.....

MR. BROWN: Okay. Well - - -

THE COURT: That's the evidence and I'll let him amend. I understand you're going to object to it.

. . . .

THE COURT: But I'm going to — I'm going to let him go ahead and amend anyhow. So, I'll go ahead and let you amend instanter by interlineation to show that you're suing on a guarantee, so — I take it, Mr. Martin [defendant's counsel], you must have known that?

MR. MARTIN: Not really. I — There's no guarantee around to see. I've never seen a guarantee. . . .

THE COURT: Well, I presume your client must have known that — that she wasn't hospitalized during that period of time and that she didn't have — incur a bill for her own medical care or hospitalization that - - -

MR. MARTIN: That's right. That's why she's not liable for this gentleman's bill.

THE COURT: - - - that visit in the hospital. Well, I — That's another question. But — So, I take it your client must have known that they were suing on some kind of guarantee. The evidence is that her insurance company did pay $10,000 on the bill. - - -

MR. MARTIN: Now - - -

THE COURT: - - - So, I presume that they must have known — she must have known something about that, so.....

MR. MARTIN: There was evidence that Crown Life paid, but no evidence of — what the relationship was between her and Crown Life.

THE COURT: Well, that's true, but it was indicated that it was her insurance company I believe, so at least — billed to her address, so - - -

Over defendant's objection, the court then allowed plaintiff to amend its petition by interlineation to read the Lutheran Medical Center "provided necessaries of life *to James Horst whose account was guaranteed by Georgia L. Vesely.*" (Emphasized words are those added by the permitted interlineation.)

Defendant then moved to amend her answer to allege a statute of frauds defense. The court granted a short recess to allow defendant to find the proper statutory reference. Sometime before the court reconvened, defendant's answer was amended to allege that the "purported Guarantee must be in writing in accordance with 36-202 of the Neb. Statutes." The record is unclear as to when this amendment was made, but clearly indicates that immediately after the recess, plaintiff orally moved to dismiss without prejudice. Defendant objected to plaintiff's motion to dismiss the petition, on the grounds that the case had been submitted to the trier of fact.

The county court concluded that the matter had not been finally submitted and that the plaintiff had "a right to have [the petition] dismissed on his motion at his expense at any time before a decision is rendered . . . ." The court then sustained plaintiff's motion to dismiss without prejudice, finding that "it's discretionary, in any event . . . ."

Defendant timely appealed to the district court for Sarpy County. The district court found that "[u]nder these facts and circumstances . . . there had been a final submission of the case, and whether or not plaintiff's motion to dismiss should be granted would be a discretionary act on the part of the County Judge." The district court further found that the county court's action in sustaining plaintiff's motion to dismiss without

prejudice was an abuse of discretion, and ordered that the judgment "be reversed, and the matter remanded with directions to deny the plaintiff's motion to dismiss and grant the defendant's motion for a directed verdict."

Neb. Rev. Stat. § 25-601 (Reissue 1989) provides, "An action may be dismissed without prejudice to a future action (1) by the plaintiff, before the final submission of the case to the jury, or to the court where the trial is by the court . . . ." This statute has long been interpreted to mean that any time before final submission of the case to the fact finder, plaintiff may dismiss an action, without prejudice, as a matter of right. *Schroeder v. Schroeder*, 223 Neb. 684, 392 N.W.2d 787 (1986); *Duffy v. Cody*, 129 Neb. 737, 262 N.W. 828 (1935); *Reams v. Sinclair*, 97 Neb. 542, 150 N.W. 826 (1915).

The right of a plaintiff to dismiss without prejudice after submission of the case has been held to be a discretionary matter for the trial court. In *Bee Building Co. v. Dalton*, 68 Neb. 38, 43, 93 N.W. 930, 932 (1903), we said, "The discretionary power of the district court to set aside a submission and receive further evidence, or to postpone the trial, or even to permit a dismissal of the case, is not doubted . . . ." The *Bee Building Co.* case also held that if a plaintiff attempts to dismiss his action as a matter of right after it has been finally submitted and the court grants plaintiff's motion on those grounds, the dismissal would be erroneous.

Defendant contends that the plaintiff in this case had no right to dismiss without prejudice after defendant's motion for directed verdict was made and that the court was without authority to grant plaintiff's motion to dismiss without prejudice. Defendant relies on language in *Rhode v. Duff*, 208 F. 115 (8th Cir. 1913), and *Spies v. Union Pac. R. Co.*, 250 F. 434 (8th Cir. 1918), for this proposition. We agree that in this case, after defendant moved for a directed verdict and argument of both counsel on that motion had been completed, the case was under submission and plaintiff lost its absolute right to dismiss without prejudice. The trial court's holding to the contrary that the plaintiff has "a right to have [the petition] dismissed on his motion at his expense at any time before a decision is rendered" is specifically rejected.

We hold that the trial court has discretion to grant a plaintiff's motion to dismiss without prejudice when the case is under submission but before it is decided. *Rhode, supra*, and *Spies, supra*, state that after final submission, a plaintiff's motion to dismiss without prejudice "comes too late." We reject the holdings in *Rhode* and *Spies* and hold that a trial court, after submission of a case, has discretion to grant a plaintiff's motion to dismiss without prejudice, depending on the facts and circumstances of the case before the court. See *Bee Building Co. v. Dalton, supra*. The dispositive issue in this case is whether the trial court abused its discretion in granting plaintiff's motion to dismiss after the case was taken under submission.

The facts show that plaintiff put on its evidence and rested and that defendant rested and then moved for a directed verdict. Both parties argued the merits of defendant's motion.

The record shows that plaintiff had a theory concerning what a "guarantor" was for his case, and argued to the court in support of that theory. The plaintiff did not, at any time, move to amend its petition, but was, in effect, directed to do so by the trial court. Before that direction, plaintiff had explained its theory to the court and stated, "Other than that I have nothing further." Without ruling on the defendant's motion for a directed verdict, the court suggested that plaintiff amend its petition, and then granted leave to defendant to amend her answer.

We have the situation, then, where each party has completed its evidence and where the law in favor of each party has been argued to the court. Rather than decide the issue thus squarely presented to it, the court undertook to have the pleadings revised, apparently to present the case in a fashion the trial court thought proper. The amendment suggested by the court was not granted to permit plaintiff to conform its pleadings to the proof adduced, but instead introduced a basic theory of recovery not shown by the evidence. At this point, the plaintiff realized the evidence presented could not support the petition as filed or as the court suggested it to be amended, and therefore moved for dismissal without prejudice.

The trial court's intervention was inappropriate. See, *State v.*

*Ferris*, 212 Neb. 835, 840, 326 N.W.2d 185, 188 (1982) (Caporale, J., concurring) ("justice is better served when judges remember they are adjudicators, not litigators"); *Franks v. Franks*, 181 Neb. 710, 150 N.W.2d 252 (1967). The court's later action in granting plaintiff's motion to dismiss without prejudice constituted an abuse of discretion.

Since we have determined that the trial court erred in granting plaintiff's motion to dismiss, we then must consider whether the trial court erred in refusing to grant defendant's motion for a directed verdict. In the case before the court, there was no evidence adduced by plaintiff which would have entitled plaintiff to judgment against defendant. No evidence established any legal responsibility of defendant to plaintiff. We affirm the determination of the district court, in its appellate capacity, holding that the judgment of the trial court should be reversed and the cause remanded to the county court with directions to deny plaintiff's motion to dismiss without prejudice and to grant defendant's motion for a directed verdict.

AFFIRMED.